UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYLWIN JOHNSON, JR., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA FORENSIC MEDICAL GROUP, et al., <br><br> Defendants. | Case No. 1:17-cv-00755-LJO-EPG (PC) <br><br> FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION <br><br> (ECF NOS. 8 & 11) <br><br> OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

Aylwin Johnson, Jr. ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 9). Defendant(s) declined to consent to magistrate judge jurisdiction. (ECF No. 21).

The Court previously screened Plaintiff's complaint before Defendants appeared. (ECF No. 11). The Court found that Plaintiff stated cognizable claims against defendants Dr. Ho, R.N. Larranaga, California Forensic Medical Group, Stanislaus County, and Stanislaus County Sheriff's Department for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and dismissed all other claims and defendants without prejudice. (<u>Id.</u>).

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the order by the magistrate judge at the screening stage.

1

## I. WILLIAMS v. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its order dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening orders.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing

2

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF ALLEGATIONS IN PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff alleges that, on November 17, 2016, he slipped in the shower, severely injuring his right hand.[1] The pain was excruciating. Plaintiff immediately yelled a "Medical Man Down."

Medical (California Forensic Medical Group is the chief medical provider for Stanislaus County Jail, and is Plaintiff's medical provider) told Plaintiff that nothing could be done until an x-ray was performed. Plaintiff was not given any treatment for his injury or the pain.

On November 18, 2016, Plaintiff underwent an x-ray for the injury to his right hand. The x-ray revealed that Plaintiff had sustained structural damage to his hand. The x-ray showed an extensive oblique 5th metacarpal neck fracture with severe misalignment and massive swelling. Due to the lack of care, the swelling had profusely magnified by the time Plaintiff was seen by Dr. Ho (of California Forensic Medical Group).

---

[1] It appears that Plaintiff was incarcerated in Stanislaus County Jail during the time periods relevant to this complaint.

Despite Plaintiff's pleas to medical staff about the pain he was in, he was ignored and denied proper treatment for four days.

On November 21, 2016, Plaintiff was seen by Dr. Ho. Dr. Ho shared the results and x-ray imagery with Plaintiff. The findings of Plaintiff's initial x-ray were confirmed. Plaintiff asked Dr. Ho about the need to reset Plaintiff's hand (medically maneuvering the misaligned bone structure correctively in order for the bone structure to heal properly). Dr. Ho told Plaintiff that had he not been incarcerated he would recommend surgery, but due to Plaintiff's incarceration the jail and medical provider would not allow it.

Plaintiff was then issued a hard splint and Ibuprofen for the pain, and was told to keep his hand immobilized for four weeks.

Plaintiff complied with the plan of care issued by Dr. Ho. However, at the end of the four weeks, Plaintiff saw that his hand was healing incorrectly. Additionally, Plaintiff had lost significant mobility. Plaintiff notified medical. Medical told Plaintiff to submit a grievance, which he did.

On December 26, 2016, Plaintiff received a response to his appeal from R.N. Baldwin (of California Forensic Medical Group), at which time Plaintiff was scheduled for a follow-up x-ray. Plaintiff was advised to wear his splint. Plaintiff complied and followed medical's instruction.

On or around December 29, 2016, a second x-ray was taken. It indicated that the bone structure in Plaintiff's hand was healing incorrectly. Plaintiff was once again advised to wear a hard split for four weeks. Plaintiff once again complied with this order.

After another four weeks of wearing the split, Plaintiff notified medical that, despite the swelling subsiding, he was still unable to move his hand or use it properly. At this time, it was clearly apparent and visible by the "knot" of bone that protruded from Plaintiff's hand that his hand was in need of surgery.

On January 24, 2017, a third x-ray was administered, at which time Plaintiff's fears were confirmed. The third x-ray indicated that the bones in Plaintiff's hand had healed improperly, and that surgery would be required. Plaintiff once again conveyed his concerns to

medical staff, but they did not respond. So, Plaintiff submitted his second level grievance to the medical doctor for Stanislaus County Jail.

On February 6, 2017, Plaintiff received a response from R.N. Larranaga, Program manager. She made numerous contradictory statements, each one more negligent than the first. She stated that Plaintiff received adequate care for his injury, yet conceded that Plaintiff's injury did not heal correctly. She also stated that another x-ray would be scheduled, at which time the plan of care would be revisited. However, in the very next sentence she stated that no further follow-up work was indicated. R.N. Larranaga also stated that if there was any change in Plaintiff's healing process he should notify medical. Finally, she stated that if Plaintiff was not pleased with the quality of care he was receiving he would be financially responsible for medical visits and medical procedures.

Plaintiff alleges that R.N. Larranaga refused to order or allow her medical staff to properly treat Plaintiff's injury.

Plaintiff alleges that California Forensic Medical Group is liable because the medical negligence of its employees left Plaintiff significantly impaired.

Plaintiff alleges that, if given the opportunity, he will prove that California Forensic Medical Group and R.N. Larranaga engage in systematic malpractice of charging inmates medical fees for visits (co-pays), taking county contracts, and, in the most draconian of ways in order to achieve their corporation's bottom line for cost efficiency purposes, they purposefully engage in negligence by failing to properly treat patients under their medical supervision.

Plaintiff's last x-ray and grievance denial was around the first week of April 2017. Since then California Forensic Medical Group has taken Plaintiff's splint away and has refused to provide Plaintiff with proper care.

Plaintiff alleges that his hand is permanently disabled, and that he suffers from physical and mental anguish.

\\\
\\\
\\\

## IV. SUMMARY OF ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint ("FAC") alleges many of the same facts as his previous complaint. However, the FAC includes two additional defendants (Stanislaus County and Stanislaus County Sheriff's Department), and an Eighth Amendment conditions of confinement claim. Plaintiff also alleges that he is still not receiving treatment.

Plaintiff also now alleges a second unconstitutional policy. According to Plaintiff, pill pass nurses told Plaintiff that California Forensic Medical Group has a policy of not providing medical care to an inmate unless that inmate is first seen by a doctor. Plaintiff also alleges that doctors do not work on the weekends, and that broken bones are not considered an emergency.

As to the conditions of confinement claim, Plaintiff alleges that his injury occurred due to the unsafe and harmful elevated position of the showers. According to Plaintiff, the shower stall is elevated approximately 18-20 inches from the ground, and the stainless steel ledges are extremely slippery when wet. Plaintiff further alleges that there are no hand rails to hold on to when exiting the shower (or any other support), that there are no warning signs, and that there are no lines or clips to hang clothes on. Plaintiff also alleges that the jail has failed numerous health and safety code inspections

## V. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los

Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must

allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

"Local governing bodies… can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where… the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690 (footnote omitted).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are action[s] for which the municipality is actually responsible." Connick v. Thompson, 563 U.S. 51, 60–61 (2011) (internal citations and quotations omitted) (alteration in original).

### VI. LEGAL STANDARD FOR EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS CLAIMS

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

"[M]unicipalities and other local government units… [are] among those persons to whom § 1983 applies." Monell, 436 U.S. at 690 (1978). However, the deliberate indifference standard for municipalities and local governmental entities involves only an objective inquiry. Farmer, 511 U.S. at 840–41; Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir.

2016), cert. denied sub nom. Los Angeles Cty., Cal. v. Castro, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017).

## VII. LEGAL STANDARD FOR EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer, 511 U.S. at 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." Id. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." Id. (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). The exposure to toxic substances can support a claim under section 1983. See Wallis v. Baldwin, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (exposure to asbestos). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must

have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"[M]unicipalities and other local government units… [are] among those persons to whom § 1983 applies." Monell, 436 U.S. at 690 (1978). However, the deliberate indifference standard for municipalities and local governmental entities involves only an objective inquiry. Farmer, 511 U.S. at 840–41; Castro, 833 F.3d 1060 at 1076.

## VIII. DEFENDANTS DR. HO, R.N. LARRANAGA, AND CALIFORNIA FORENSIC MEDICAL GROUP

The Court finds that Plaintiff has stated a cognizable claim for deliberate indifference to his serious medical needs against defendants Dr. Ho, R.N. Larranaga, and California Forensic Medical Group.

Plaintiff has alleged that defendant Dr. Ho told Plaintiff that had Plaintiff not been incarcerated, defendant Dr. Ho would have recommended surgery. However, due to Plaintiff's incarceration, the jail and medical provider would not allow surgery. Based on this allegation, it appears that defendant Dr. Ho knew that Plaintiff had a serious medical need but failed to provide Plaintiff with the treatment Plaintiff needed. Accordingly, Plaintiff has stated a cognizable Eighth Amendment claim against defendant Dr. Ho.

As to defendant R.N. Larranaga, when responding to a grievance, she appeared to have acknowledged that Plaintiff needed medical treatment, but then refused to provide it. Accordingly, Plaintiff has stated a cognizable Eighth Amendment claim against defendant R.N. Larranaga.

As to defendant California Forensic Medical Group, the Court finds a cognizable deliberate indifference to serious medical needs claim based on the alleged unconstitutional policy of not providing medically necessary surgeries to inmates, as well as the alleged unconstitutional policy that leads to, depending on the timing of the injury, leaving broken bones untreated for several days because no treatment is provided until an inmate is seen by a doctor, and doctors do not work on the weekends (broken bones are not considered

emergencies).[2]

## IX. DEFENDANTS STANISLAUS COUNTY AND STANISLAUS COUNTY SHERIFF'S DEPARTMENT

Plaintiff has now alleged that there are two unconstitutional policies in place that caused Plaintiff to receive constitutionally inadequate medical care: A policy of failing to provide non-emergency surgeries to inmates, and, depending on the timing of the injury, a policy that leads to broken bones going untreated for several days because no treatment is provided until an inmate is seen by a doctor, and doctors do not work on the weekends (broken bones are not considered emergencies). Based on the allegations in the complaint it is not clear if California Forensic Medical Group promulgated these policies, or if it was implementing policies promulgated by Stanislaus County or Stanislaus County Sheriff's Department.[3] Despite this lack of clarity, and because Plaintiff likely does not yet know which defendant was responsible for promulgating the allegedly unconstitutional policies, the Court will allow Plaintiff's claim for deliberate indifference to his serious medical needs to proceed against both Stanislaus County and Stanislaus County Sheriff's Department.

As to Plaintiff's conditions of confinement claim, the Court finds Plaintiff has failed to state a claim upon which relief may be granted. Even taking Plaintiff's allegations as true, there is no indication that the elevated shower stall, slippery floor, and a lack of hand rail (or any other support) in or near the shower posed an *excessive* risk to Plaintiff's health or safety. Additionally, there is no indication that either Stanislaus County or Stanislaus County Sheriff's Department knew of the risks. Plaintiff does allege that Stanislaus County Jail failed numerous

---

[2] "Private actors have been found to act under color of state law where they contract with the state to provide a service that the state bears 'an affirmative obligation to provide.' West v. Atkins, 487 U.S. 42, 55–56 (1988) (finding private doctor acted under color of state law in providing medical care to inmates under a contract with prison because Eighth Amendment requires prison to provide such care to inmates)." Cox v. California Forensic Med. Grp., No. 14-CV-04662-KAW, 2015 WL 237905, at *2 (N.D. Cal. Jan. 14, 2015). See also Price v. Stanislaus Cty. Sheriff's Dep't, No. 106-00255OWWNEWDLBPC, 2007 WL 2572125, at *2 (E.D. Cal. Sept. 5, 2007) (finding that "[i]n light of notice pleading standards, plaintiff's allegation that the California Forensic Medical Group is a medical contractor at the jail is sufficient [to] allow plaintiff to bring suit under section 1983 against it as if it is a local government unit.").

[3] It is likely that Stanislaus County and Stanislaus County Sheriff's Department are actually the same defendant. However, the Court is not addressing this issue at this time.

health and safety inspections, and that Stanislaus County was fined, but there is no allegation that any of the inspections or fines related to how the showers are set up.[4]

## X. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that all claims and defendants, except for Plaintiff's claims against defendants Dr. Ho, R.N. Larranaga, California Forensic Medical Group, Stanislaus County, and Stanislaus County Sheriff's Department for deliberate indifference to serious medical needs in violation of the Eighth Amendment, be DISMISSED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __December 14, 2017__        /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE

---

[4] The Court is also not finding a cognizable claim against Lt. Houston or Captain Duncan. First, neither is named as a defendant. Second, even if they were, based on Plaintiff's allegations Plaintiff does not appear to have a cognizable claim against either. It appears that Lt. Houston and Captain Duncan simply denied Plaintiff's administrative appeal. Unlike he did for his claim against defendant R.N. Larranaga, Plaintiff has not alleged facts suggesting that either Lt. Houston or Captain Duncan subjectively knew that Plaintiff needed medical treatment, but decided to deny Plaintiff's appeal for medical treatment anyway.